UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AETNA GROUP USA, INC.,
    Plaintiff

vs

AIDCO INTERNATIONAL, INC.,
    Defendant

Case No. 1:11-mc-023

Spiegel, J.
Litkovitz, M.J.

**ORDER**

This matter is before the Court on plaintiff Aetna Group USA, Inc.'s motions to compel non-parties NS Fund I, LLC, Palligistics, LLC, Salh F. Khan, and Olivia K. Khan to comply with plaintiff's subpoena duces tecum (Docs. 1, 2, 3); the memorandum in opposition to the motions to compel by NS Fund I, LLC, Palligistics, LLC, Salh F. Khan, and Olivia K. Khan (collectively "respondents") (Doc. 5); and plaintiff's reply memorandum. (Doc. 6).

**PROCEDURAL BACKGROUND**

In September 2010, plaintiff obtained a judgment against AIDCO International, Inc. (AIDCO), a now-dissolved Michigan corporation, for approximately $644,000 in the United States District Court for the Northern District of Georgia. Plaintiff claims that during the pendency of the litigation in the Northern District of Georgia, AIDCO and one of its creditors, NS Fund, took steps to fraudulently transfer AIDCO's assets. On March 8, 2010, pursuant to an Asset Purchase Agreement (APA) (Doc. 5, Exh. B), AIDCO sold substantially all of its assets to Palligistics, LLC, a newly formed company. Palligistics acquired AIDCO's assets in exchange for assuming AIDCO's $2.2 million debt to NS Fund. (Doc. 1, Exh. G). Plaintiff alleges that: AIDCO was immediately dissolved following the execution of the APA; Palligistics, like AIDCO, is in the business of robotic palletizing; Palligistics assumed at least six of AIDCO's

customer contracts; Palligistics is located at 1 Kovach Drive, Cincinnati, Ohio 45215, which was AIDCO's former place of business; Palligistics has the same President and Vice-President, as well as at least five of the same senior employees, as AIDCO; the Khans owned 100% of AIDCO and "apparently own a LLC with a 49% ownership interest in, and a purchase option for, the remaining 51% of Palligistics." (Doc. 6 at 2). Plaintiff further alleges that while respondents represent that AIDCO's assets were valued at $637,000.00 at the time the APA was executed, AIDCO's balance sheet dated one year prior to the APA valued its assets at $2.9 million. (Doc. 6 at 2). Plaintiff claims that following the execution of the APA, AIDCO ceased its defense of the federal action in Georgia and plaintiff subsequently obtained a default judgment against AIDCO. Plaintiff claims that AIDCO is now essentially a judgment-proof, defunct corporate entity.

On November 15, 2010, plaintiff served the respondents, who are all non-parties, with subpoenas duces tecum to obtain post-judgment discovery pursuant to Fed. R. Civ. P. 69.[1] Plaintiff seeks discovery on the theory that the transfer of AIDCO's assets to Palligistics was a fraudulent transfer. Plaintiff contends that Palligistics, the Khans and/or NS Fund are liable for the judgment against AIDCO because the APA was a fraudulent transaction amounting to a *de facto* merger and because Palligistics is merely a continuation of AIDCO.

In response to the subpoenas, respondents provided some discovery but also objected to many of the requests. Following respondents' supplemental responses to plaintiff's discovery requests, with which plaintiff was dissatisfied, plaintiff filed the instant motions to compel in this Court.

---

[1]That rule provides in relevant part, "In aid of the judgment or execution, the judgment creditor . . . whose interest appears of record may obtain discovery from any person - including the judgment debtor - as provided in these rules. . . ." Fed. R. Civ. P. 69(a)(2).

In their memorandum in opposition to the motions to compel, respondents do not contest plaintiff's right to obtain post-judgment discovery from them as non-parties to the underlying litigation. (Doc. 5). Respondents state they remain willing to supplement their responses to the extent they can identify further responsive documents.

Nevertheless, respondents vigorously dispute plaintiff's assertion that the transfer of assets from AIDCO to Palligistics was fraudulent. Respondents allege that Palligistics was formed in an effort to salvage the investment of the first secured lender, NS Fund, which was owed over $2.2 million by AIDCO. Respondents state that the second secured lender holds notes of $1 million, which have also gone unpaid. Respondents explain that in light of the Georgia lawsuit against AIDCO and the existence of other creditors, AIDCO tried to market itself for sale. When no purchasers were forthcoming, NS Fund, the first secured lender, "created Palligistics and PL Funding, LLC and offered to purchase [AIDCO] in exchange for assuming the senior secured debt of NS Fund." (Doc. 5 at 4). Respondents assert that Salh and Olivia Khan, the former owners of AIDCO, were then hired by Palligistics because of their knowledge of the industry and potential ability to make the new company a viable business concern. Respondents assert that neither of the Khans are owners of Palligistics. (Doc. 5 at 5).

On April 14, 2011, the undersigned held a hearing on plaintiff's motions to compel. On the morning of the hearing, counsel for respondents provided a compact disc to counsel for plaintiff that purportedly contained additional documents responsive to the subpoenas served on respondents. Because plaintiff did not have an opportunity to review the documents contained on the disc, and in an effort to narrow the discovery dispute, the Court requested plaintiff to supplement its motions by identifying the responsive documents not yet produced by

respondents. Both plaintiff and respondents have provided supplemental memoranda to the Court identifying the document requests that remain in dispute. (Docs. 12, 13, 14).

## POST-JUDGMENT DISCOVERY STANDARDS

Plaintiff brings the motions to compel pursuant to Fed. R. Civ. P. 45(c)(2)(B)(i), which provides that the party serving a subpoena duces tecum may move the issuing court for an order compelling production or inspection. "If any documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing." *Waldemar E. Albers Revocable Trust v. Mid-America Energy, Inc.*, Nos. 5:08-cv-274, 3:07-cv-421, 2008 WL 4544438, at *1 (E.D. Ky. Oct. 10, 2008) (citing *Bariteau v. Krane*, 206 F.R.D. 129 (W.D. Ky. 2001)).

Post-judgment discovery may be utilized to obtain information on the "existence or transfer of the judgment debtor's assets." *British Intern. Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000) (citing *Federal Deposit Insurance Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)). The scope of post-judgment discovery is broad, *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (citations omitted), and includes the right to obtain discovery from non-parties. *See* Fed. R. Civ. P. 69(b). A creditor is permitted to "'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred." *Andrews v. Raphaelson*, No. 5:08-cv-077, 2009 WL 1211136, at *3 (E.D. Ky. April 30, 2009) (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 560 n.1 (S.D.N.Y. 1977) (judgment

creditor entitled to discover portions of a settlement agreement relating to the existence or transfer of defendants' assets, where it was alleged that the agreement involved improper transfers of such assets).

## RESOLUTION

In this case, plaintiff asserts that the discovery it seeks from the respondents is relevant to its claim that the APA between AIDCO and Palligistics amounts to a *de facto* merger and therefore creates successor liability. To establish successor liability, plaintiff must show, *inter alia*: (1) the continuation of the previous business activity and corporate personnel; (2) a continuity of shareholders resulting from a sale of assets in exchange for stock; (3) the immediate or rapid dissolution of the predecessor corporation; and (4) the assumption by the purchasing corporation of all liabilities and obligations necessary to continue the predecessor's business operations. *See Kemper v. Saline Lectronics*, 366 F. Supp. 2d 550, 555 (N.D. Ohio 2005) (citing *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1134 (Ohio 1993)). Therefore, plaintiff's requests for discovery will be reviewed in the context of the above factors and addressed in the order presented by plaintiff.

### Items 1 and 2: Software licensing agreements and contracts

Plaintiff seeks information about software licensing agreements and contracts to determine whether Palligistics assumed the liabilities and obligations of AIDCO necessary to continue AIDCO's business operations for purposes of the fourth element of successor liability. The Court determines that the information sought by plaintiff is relevant or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b).

**1. Software license agreements to which AIDCO was a party, including but not limited to AIDCO's FEON, Autocad, and Rockwell license agreements. (Request to**

Palligistics No. 6; Request to NS Fund No. 6; Request to the Khans No. 6).

**FEON License Agreement**: Respondents state that this agreement is not a software licensing agreement and need not be produced. Nevertheless, it appears that the FEON License Agreement is responsive to the request for "all contracts of any type" requested in Item 2 below. Therefore, respondents must produce the FEON License Agreement.

**Autocad and Rockwell License Agreements**: Respondents state that no "paper copies" of such licensing agreements exist. Plaintiff's request is not limited to "paper copies" and the Autocad and Rockwell License Agreements must be produced.

**2. All contracts between AIDCO and any other party as of September 24, 2008, March 8, 2010, March 10, 2010, and December 8, 2010, including but not limited to (1) AIDCO's contracts with Kraft, Proctor & Gamble, Solo Cup, R.A. Jones, Ventura Foods, and Kraft Food; (2) AIDCO's facility lease for 1 Kovach Drive, Cincinnati, Ohio 45215; and (3) AIDCO's lease for MIS Computer System with National City Bank. (Requests to Palligistics Nos. 7-11, 13; Requests to NS Fund Nos. 7, 11; Requests to the Khans Nos. 7, 11).**

**Contracts with Kraft, Proctor & Gamble, Solo Cup, R.A. Jones, and Kraft Foods:** Respondents state that the only contract with "Kraft" is with "Kraft Foods." Respondents state that the Kraft Foods contract, along with the contracts for Proctor & Gamble and Solo Cup, have been provided in respondents' supplemental responses to plaintiff. Plaintiff does not dispute this representation. Therefore, plaintiff's motion to compel is **DENIED** in this regard.

Respondents state that the contract with R.A. Jones was completed before the Palligistics transaction occurred and is reflected in all financial statements provided. Plaintiff does not dispute this representation. Therefore, plaintiff's motion to compel is **DENIED** in this regard.

**Contract with Ventura Foods**: Respondents state that the contract with Ventura Foods was valued at $ 755.50 and can be provided to plaintiffs. Respondents must produce a copy of

this contract.

**AIDCO'S facility lease**: Respondents have not yet provided a copy of the lease. They are ordered to produce a copy.

**AIDCO's lease for MIS Computer System with National City Bank**: Respondents allege that Palligistics did not assume this contract, so it is not relevant. Plaintiff has submitted a copy of Schedule 3 to the APA (Doc. 14, Exh. A), which indicates the opposite is true. Respondents are ordered to produce a copy of this lease agreement.

Respondents are **ORDERED** to provide the above responses to plaintiff's discovery requests within **twenty (20) days** of the date of this Order. If such documents cannot be found, respondents must produce an affidavit verifying the efforts taken to locate such documents and the results thereof.

**Item 3: All documents that evidence, reflect upon, relate to or refer to AIDCO's financial condition since January 1, 2007, including but not limited to (1) AIDCO's balance sheet for 2007; (2) AIDCO's profit and loss statements for 2007 and 2009; and (3) AIDCO's "Book Asset Detail" for 2007 and 2009. (Request to NS Fund No. 1; Requests to the Khans No. 1, 14).**

**AIDCO's balance sheet for 2007 and profit and loss statements for 2007 and 2009**: Respondents state they have provided copies of these documents. Plaintiff does not dispute this representation. Therefore, plaintiff's motion to compel is **DENIED** in this regard.

**AIDCO's "Book Asset Detail" for 2007 and 2009**: Respondents state they will look for these reports but cannot guarantee they will be found. Respondents are **ORDERED** to provide these reports to plaintiff within **twenty (20) days** of the date of this Order. If such documents cannot be found, respondents must produce an affidavit verifying the efforts taken to locate such documents and the results thereof.

**Item 4: All documents that evidence, reflect upon, relate to or refer to any payments made by AIDCO, Palligistics, and NS Fund to any employee, agent or representative of AIDCO since September 24, 2008, including but not limited to (1) the Khans' W2s; and (2) Palligistics' employment agreements with Kerry Powell, Peter Schuster, Jack Uhl, and Philip Raines. (Requests to Palligistics No. 18, 26; Requests to NS Fund No. 18; Requests to the Khans Nos. 18, 36-38).**

Respondents state they will provide the Khans' W2s. Respondents also state that the listed employees never executed employment agreements with Palligistics or AIDCO. Plaintiff does not dispute this representation. Therefore, plaintiff's motion to compel is **DENIED** in this regard.

### Items 5, 6 and 7: Financial information for Salh and Olivia Khan

Plaintiff seeks financial information from Salh and Olivia Khan, including tax returns for 2008, 2009, and 2010 (Request to the Khans No. 33); personal financial statements that reflect assets and liabilities for 2008, 2009 and 2010 (Request to the Khans No. 34); and savings, money market, checking, and brokerage account statements from September 24, 2008, to the present (Request to the Khans No. 35). Plaintiff contends the requested information is relevant to determine whether the Khans should be held personally liable for AIDCO's breach of contract (the subject matter of the lawsuit in the Northern District of Georgia in which plaintiff obtained a judgment against AIDCO) because AIDCO was the mere alter ego of the Khans, who owned 100% of AIDCO.

Respondents contend there is no need for discovering the Khans' tax returns as the W2s and K1s from AIDCO or Palligistics have been or will be provided for 2006 through 2010, and there is nothing relevant contained in the tax returns. Respondents also argue that each spouse has the right to invoke their adverse spousal testimony privilege under Fed. R. Evid. 501.

In reply, plaintiff contends that respondents have not produced the Khans' W2s from

-8-

AIDCO or Palligistics to date or any financial information from 2010 and that the AIDCO K1s are not an exhaustive accounting of the Khans' income, including that from Palligistics, Blue Horizon Group, LLC, and Blue Horizon Group GmnH & Co. KG. Plaintiff contends the tax returns are probative of whether the Khans were the beneficiaries of a fraudulent transfer and that no spousal privilege exists to protect the Khans' respective tax returns.

The Court finds the information sought by plaintiff on the Khans' finances is relevant or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). Under Ohio law, the corporate form may be disregarded and a shareholder may be held personally liable for a corporation's misdeeds when, *inter alia*, a shareholder's control over the corporation was so complete that the corporation had no separate existence of its own. *See Tech. & Servs., Inc. v. Tacs Automation, LLC,* No. 2:09-CV-1113, 2010 WL 4792610, at *4 (S.D. Ohio Nov. 17, 2010) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)). "Inquiry into the assets of third persons is permissible where 'the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them.'" *Internet Direct Response, Inc. v. Buckley*, No. 09-01335, 2010 WL 1752181, at *2 (C.D. Cal. April 29, 2010) (quoting *Credit Lyonnais*, 160 F.3d at 431). Rule 69 permits a judgment creditor "full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment." *Credit Lyonnais, S.A. v. SGC International, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). Plaintiff's discovery is relevant to determining whether AIDCO was the alter ego of the Khans, who previously owned AIDCO, and whether the Khans ultimately received income or assets from the dissolution of AIDCO so that the Khans should be held

personally liable for the judgment plaintiff obtained against AIDCO. The Khans' tax returns and other financial information are relevant since their income level is probative of their control over AIDCO.

Here, the circumstances surrounding the dissolution of AIDCO and the sale of assets to Palligistics are sufficient to raise a reasonable question about the bona fides of the transfer of assets between the two. It is undisputed that the Khans owned 100% of AIDCO before it was dissolved. (Doc. 5 at 5). Shortly before plaintiff obtained a judgment against AIDCO, Palligistics acquired AIDCO's assets valued at $637,000 in exchange for assuming AIDCO's $2.2 million debt to NS Fund. (Doc. 5, Exh. G). Yet, AIDCO's balance sheet one year prior to the execution of the APA valued its assets at $2.9 million. (Doc. 5, Exh. E). Like AIDCO, Palligistics is in the business of robotic palletizing. Moreover, Palligistics assumed at least six of AIDCO's customer contracts; Palligistics is located at 1 Kovach Drive, Cincinnati, Ohio 45215, which was AIDCO's former place of business; and Palligistics has the same President (Salh Khan) and Vice-President, as well as five of the same senior employees as AIDCO. The relationship between the Khans, AIDCO, and Palligistics is sufficient to raise a reasonable question about the bona fides of the transfer of assets in this case. In light of the broad scope of discovery permitted by the Federal Rules, plaintiff's requested discovery of the Khans' financial information is relevant and permissible.

To the extent respondents contend that the financial documents are protected by the spousal testimony privilege under Federal Rule of Evidence 501, respondents have failed to support such contention with any legal authority showing the privilege is applicable under the circumstances of this case. Nor has the Court been able to locate any such authority.

Accordingly, respondents are **ORDERED** to provide to plaintiff the Khans' tax returns for 2008, 2009, and 2010; personal financial statements that reflect assets and liabilities for 2008, 2009 and 2010; and savings, money market, checking, and brokerage account statements from September 24, 2008, to the present within **twenty (20) days** of the date of this Order.

**Item 8: All documents that evidence, reflect upon, relate to or refer to any consideration the Khans have received, have been promised, or expect to receive from Palligistics and/or NS Fund, including all subsidiaries and affiliated entities. (Requests to the Khans Nos. 37-38).**

Respondents assert that this information has already been provided. Plaintiff does not dispute this representation. Therefore, plaintiff's motion to compel is **DENIED** in this regard.

**Item 9: All documents that evidence, reflect upon, relate to or refer to the ownership of Palligistics, including but not limited to (1) Blue Horizon Group GmbH & Co. KG's Operating Agreement; (2) Blue Horizon Group GmbH & Co. KG's financial statements or similar statements that refer to, relate to, reflect upon, evidence and/or concern assets and liabilities for 2010; and (3) Blue Horizon Group, LLC's financial statements or similar statements that refer to, relate to, reflect upon, evidence and/or concern assets and liabilities for 2010. (Request to Palligistics No. 26; Request to the Khans No. 39).**

**Blue Horizon Group GmbH & Co. KG's Operating Agreement and financial statements or similar statements that refer to, relate to, reflect upon, evidence and/or concern assets and liabilities for 2010**:

Respondents assert that Blue Horizon Group GmbH & Co. KG is not a party to this lawsuit or a named respondent in plaintiff's subpoena.

Plaintiff asserts that Blue Horizon Group GmbH & Co. KG and Salh Khan individually are the sole members of Blue Horizon Group, LLC, which has a 49% ownership interest in Palligistics and an irrevocable option to purchase the remaining shares in Palligistics, and therefore this information is relevant to determining whether Palligistics is a "mere continuation" of AIDCO and under Salh Khan's control.

As discussed above, a corporation that purchases the assets of another corporation may

-11-

be liable for the contractual liabilities of its predecessor corporation if, *inter alia*, "the buyer corporation is merely a continuation of the seller corporation." *Kemper*, 366 F. Supp.2d at 555 (citing *Welco Indus., Inc.*, 617 N.E.2d at 1133). "[U]nder Ohio law, a corporation is not a mere continuation of the corporation whose assets it has purchased, even though it continues to provide the same services and has the same physical plant, officers, employees, and product line as the purported predecessor. . . . Rather, the key element is identity of ownership: a common identity of stockholders, directors, and stock." *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 515 (6th Cir. 2005).

While plaintiff asserts that Blue Horizon Group GmbH & Co. KG and Salh Khan individually are the sole members of Blue Horizon Group, LLC, plaintiff has not presented any evidence establishing the ownership of Blue Horizon Group, LLC by Blue Horizon Group GmbH & Co. KG, or evidence showing that Blue Horizon Group GmbH & Co. KG has any connection to the respondents subpoenaed in this matter. Thus, the Court is not persuaded that the respondents in this case have the right, ability, or obligation to obtain the information sought by plaintiff from Blue Horizon Group GmbH & Co. KG. Plaintiff's motion to compel disclosure of the Operating Agreement and 2010 financial statements for Blue Horizon Group GmbH & Co. KG is not well-taken and is **DENIED**.

**Blue Horizon Group, LLC's financial statements or similar statements that refer to, relate to, reflect upon, evidence and/or concern assets and liabilities for 2010:**

Respondents state that "[n]one of these documents have been prepared yet. Similarly, tax returns for Blue Horizon Group, LLC have not yet been filed." (Doc. 13 at 5).

Plaintiff asserts that respondents' carefully worded response shows only that certain financial documents have not yet been "prepared," not that documents reflecting the assets and

liabilities of Blue Horizon Group, LLC do not exist. Plaintiff asserts that such responsive documents should be produced. The Court agrees.[2]

Plaintiff's request is not limited to financial statements or tax returns, and any documents that relate to or reflect Blue Horizon Group, LLC's assets and liabilities for 2010 are relevant to the issue of successor liability and must be produced by respondents.

Accordingly, respondents are **ORDERED** to provide to plaintiff any documents that relate to or reflect Blue Horizon Group, LLC's assets and liabilities for 2010 within **twenty (20) days** of the date of this Order.

**Item 10: All documents that evidence, reflect upon, relate to or refer to all business transactions of any type or nature between and/or among AIDCO, Palligistics, NS Fund and/or the Khans, as well as their subsidiaries and affiliated entities, since January 1, 2008, including but not limited to NS Fund's financial statements, balance sheets, and profit and loss statements for 2009 and 2010. (Requests to Palligistics Nos. 16-17, 19, 21, 23; Requests to NS Fund 14, 18-19, 23; Requests to the Khans Nos. 16, 23).**

Respondents contend that NS Fund's financial statements, balance sheets, and profit and loss statements for 2009 and 2010 and NS Fund's overall financial strength are not relevant. Respondents assert that NS Fund has provided all documentation related to its lending activity with AIDCO and has fully responded to this request.

Plaintiff asserts that the nature of, and circumstances surrounding, the APA are sufficient to raise a reasonable suspicion that the APA was a fraudulent transaction. Plaintiff asserts that the treatment of the AIDCO assets transfer on NS Fund's books and records is relevant to the determination of the propriety of the APA.

---

[2] Unlike the absence of information showing a connection between the non-parties subpoenaed in this case and Blue Horizon Group GmbH & Co. KG, the record in the instant case shows that Blue Horizon Group, LLC owns 49% of Palligistics; Salh Khan is a member and/or manager of Blue Horizon Group, LLC; and Blue Horizon Group, LLC has an irrevocable option to purchase Palligistics. (Doc. 5, Exhibit F, Palligistics Operating Agreement, at page 18 and § 10.4 respectively).

As indicated previously, the relationship between the Khans, AIDCO, NS Fund, and Palligistics is sufficient to raise a reasonable question about the transfer of assets in this case. NS Fund "created Palligistics." (Doc. 5 at 4). Neil Johnson, the President of NS Fund, formed Palligistics "to purchase the assets" of AIDCO. (Doc. 5 at 14). In turn, Palligistics acquired AIDCO's assets in exchange for assuming AIDCO's debt to NS Fund. The Court agrees that NS Funds' financial statements, balance sheets, and profit and loss statements for 2009 and 2010 are probative of whether the APA was a fraudulent transaction and *de facto* merger resulting in Palligistics' liability for AIDCO's judgment debt.

Accordingly, respondents are **ORDERED** to provide to plaintiff the documents requested in Item 10 within **twenty (20) days** of the date of this Order.

**Item 11: All communications between and/or among AIDCO, Palligistics, NS Fund and/or the Khans, as well as their subsidiaries and affiliated entities, since January 1, 2008. (Requests to Palligistics Nos. 20, 22, 24-25, 29-32; Requests to NS Fund Nos. 20, 22, 24-29).**

In their memorandum in opposition to the motions to compel, respondents assert that Palligistics was created one month before the APA for the purpose of acquiring the assets of AIDCO and "there are no document based communications between them." (Doc. 5 at 14). Respondents assert that "[t]he APA was discussed orally and all other communications involved attorneys and drafting the APA." *Id.* In respondents' supplemental response, respondents represent that "[t]he only possible location of any relevant communications is a hard drive belonging to NS Fund that crashed." (Doc. 13 at 5). NS Fund is willing to allow plaintiff to undertake efforts to recover information from the hard drive at plaintiff's expense, to which plaintiff is agreeable. (Doc. 14 at 5).

Accordingly, respondents are **ORDERED** to provide to plaintiff access to NS Fund's

hard drive within **twenty (20) days** of the date of this Order for purposes of data recovery at plaintiff's expense. Respondents are further **ORDERED** to provide to plaintiff any other communications, whether in hard copy or electronic format, that exist as requested by Item 11 within **twenty (20)** days of the date of this Order. To the extent respondents claim any such communications are subject to the attorney-client privilege, respondents must produce a privilege log detailing the senders, recipients, dates, and topics of the communications.

    **IT IS SO ORDERED.**

Date: 6/8/11

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge