## UNITED   STATES   DISTRICT   COURT
## SOUTHERN   DISTRICT   OF   OHIO
## WESTERN   DIVISION

AETNA GROUP USA, INC.,
      Plaintiff

vs

AIDCO INTERNATIONAL, INC.,
      Defendant

Case No. 1:11-mc-023

Spiegel, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff Aetna Group USA, Inc. (Aetna) seeks post-judgment discovery in this matter

from non-parties NS Fund I, LLC, Palligistics, LLC, Salh F. Khan, and Olivia K. Khan

(respondents).   The matter is presently before the Court on Aetna's motion for contempt (Doc.

18); respondents' motion for an order finding respondents have complied with this Court's order

compelling post-judgment discovery, terminating plaintiff's post-judgment discovery attempts,

ordering plaintiff to return attorney fees paid by respondents, or in the alternative setting a

hearing on outstanding discovery matters (Doc. 25), and Aetna's response to respondents' motion

(Doc. 31).   The matter is also before the Court on respondents' motion for a temporary cessation

of discovery (Doc. 26) and Aetna's opposing memorandum (Doc. 30).

For the reasons that follow, it is recommended that a show cause order be issued to

respondents NS Fund I, LLC, Palligistics, LLC, Salh F. Khan, and Olivia K. Khan to appear

before the district judge on a date certain and show cause why they should not be held in

contempt of court.[1]

---

[1] The undersigned magistrate judge issues a report and recommendation and a certification of contempt
under 28 U.S.C. § 636(e)(6)(B)(iii) because the relief sought by plaintiff Aetna exceeds the magistrate judge's
contempt authority. *See U.S. v. Andriacco,* 106 F. Supp.2d 991, 995 n.3 (S.D. Ohio 1999).

1

## I.  AETNA'S MOTION FOR CONTEMPT (DOC. 18)

### A.  MAGISTRATE JUDGE'S AUTHORITY ON MOTION FOR CONTEMPT

Section 636(e) of the United States Magistrate Judges Act governs the contempt authority

of magistrate judges.   28 U.S.C. § 636(e)(1).   That section provides that a "magistrate judge

serving under this chapter shall have within the territorial jurisdiction prescribed by the

appointment of such magistrate judge the power to exercise contempt authority as set forth in this

subsection."   In civil cases where the parties have not consented to final judgment by the

magistrate judge, contempt is governed by Section 636(e)(6)(B):

> (6) Certification of other contempts to the district court.--Upon the commission of
> any such act--
>
> . . . .
>
>> (B) in any other case or proceeding under subsection (a) or (b) of this section,
>> or any other statute, where--
>>
>>> (i) the act committed in the magistrate judge's presence may, in the
>>> opinion of the magistrate judge, constitute a serious criminal
>>> contempt punishable by penalties exceeding those set forth in
>>> paragraph (5) of this subsection,
>>>
>>> (ii) the act that constitutes a criminal contempt occurs outside the
>>> presence of the magistrate judge, or
>>>
>>> (iii) the act constitutes a civil contempt,
>
> the magistrate judge shall forthwith certify the facts to a district judge and may
> serve or cause to be served, upon any person whose behavior is brought into
> question under this paragraph, an order requiring such person to appear before a
> district judge upon a day certain to show cause why that person should not be
> adjudged in contempt by reason of the facts so certified.   The district judge shall
> thereupon hear the evidence as to the act or conduct complained of and, if it is
> such as to warrant punishment, punish such person in the same manner and to the
> same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B).

The magistrate judge's role on a motion for contempt in non-consent cases is to certify

facts relevant to the issue of contempt to the district judge. *See, e.g., International Brotherhood*

*of Electrical Workers, Local 474 v. Eagle Electric Co., Inc.*, No. 06-2151, 2007 WL 622504, at

*1, n.1 (W.D. Tenn. Feb. 22, 2007); *U.S. v. Ivie*, No. 05-2314, 2005 WL 1759727, at *1, n.1, and

*2 (W.D. Tenn. June 14, 2005). *See also NXIVM Corp. v. Bouchey*, No. 1:11-mc-0058, 2011

WL 5080322, at *3 (N.D. N.Y. Oct. 24, 2011) (and cases cited therein). "The certification of

facts under section 636(e) serves to determine whether the moving party can adduce sufficient

evidence to establish a prima facie case of contempt." *Telebrands Corp. v. Marc Glassman,*

*Inc.*, No. 3:09cv734, 2012 WL 1050018, at *1 (D. Conn. March 28, 2012) (quoting *Church v.*

*Steller*, 35 F. Supp.2d 215, 217 (N.D. N.Y. 1999)).

## B. CERTIFIED FACTS

The following facts are certified to the district court: In September 2010, plaintiff Aetna

obtained a judgment against AIDCO International, Inc. (AIDCO), a now-dissolved Michigan

corporation, for approximately $644,000 in the United States District Court for the Northern

District of Georgia. Plaintiff claims that during the pendency of that litigation, AIDCO and one

of its creditors, NS Fund I, LLC (NS Fund), took steps to fraudulently transfer AIDCO's assets.

On March 8, 2010, pursuant to an Asset Purchase Agreement (APA) (Doc. 5, Exh. B), AIDCO

sold substantially all of its assets to Palligistics, LLC, a newly formed company, and Palligistics

acquired AIDCO's assets in exchange for assuming AIDCO's $2.2 million debt to NS Fund (Doc.

1, Exh. G). Plaintiff alleges that AIDCO was immediately dissolved following execution of the

APA. (Doc. 6 at 2).

3

On November 15, 2010, plaintiff served the respondents, all of whom are non-parties,

with subpoenas duces tecum to obtain post-judgment discovery pursuant to Fed. R. Civ. P. 69.[2]

Plaintiff seeks discovery on the theory that the transfer of AIDCO's assets to Palligistics was a

fraudulent transfer. Plaintiff contends that Palligistics, the Khans - who are the former owners

of AIDCO - and/or NS Fund are liable for the judgment against AIDCO because the APA was a

fraudulent transaction amounting to a *de facto* merger and Palligistics is merely a continuation of

AIDCO.

In response to the subpoenas, respondents provided some discovery but also objected to

many of the requests and failed to supplement their responses to plaintiff's satisfaction,

prompting plaintiff to file in this Court motions to compel respondents to comply with the

subpoenas duces tecum. (Docs. 1, 2, 3). Respondents asserted in response to the motions that

Palligistics was created one month before execution of the APA for the purpose of acquiring the

assets of AIDCO and "there are no document based communications between them." (Doc. 5 at

14). Respondents stated that "[t]he APA was discussed orally and all other communications

involved attorneys and drafting the APA." (*Id.*). Respondents represented that "[t]he only past

transaction that could reasonably lead to the discovery of concealed or fraudulently transferred

assets is the APA and all information relating to this transaction has previously been provided to

Plaintiff." (Doc. 5 at 7). Respondents indicated they remained willing to supplement their

responses to the extent they could identify further responsive documents, while disputing

---

[2]That rule provides in relevant part, "In aid of the judgment or execution, the judgment creditor . . . whose interest appears of record may obtain discovery from any person - including the judgment debtor - as provided in these rules. . . ." Fed. R. Civ. P. 69(a)(2). Respondents concede that subpoenas may be served on non-parties in aid of execution of the judgment pursuant to Rule 69(a)(2). (Doc. 5 at 7).

4

plaintiff's assertion that the transfer of assets from AIDCO to Palligistics was fraudulent and maintaining that neither Salh nor Olivia Khan, AIDCO's former owners, are owners of Palligistics.  (*Id*. at 5).  Respondents stated they would provide an affidavit explaining their efforts to locate responsive documents.  (*Id*. at 11).

On April 14, 2011, the undersigned held a hearing on plaintiff's motions to compel, following which plaintiff and respondents provided supplemental memoranda to the Court identifying the document requests that remained in dispute.  (Docs. 12, 13, 14).  On April 25, 2011, respondents represented to the Court they had provided to plaintiff all relevant documents that pertained to the business transactions among them and that there were no other responsive documents of which they were aware.  (Doc. 13 at 5).  Respondents identified "a hard drive belonging to NS Fund that crashed" as "[t]he only possible location of any relevant communications" among respondents and their subsidiaries and affiliates since January 1, 2008. (*Id*.).  In response, plaintiff stated its willingness to undertake efforts to recover information from the hard drive at its own expense.  (Doc. 14 at 5).

The undersigned issued an order on June 8, 2011, acknowledging that the discovery plaintiff sought from respondents is relevant to plaintiff's claim that the APA between AIDCO and Palligistics amounts to a *de facto* merger and therefore creates successor liability.   The Court ordered respondents to produce items of discovery specified in its order that were relevant or reasonably calculated to lead to the discovery of admissible evidence, including software license agreements to which AIDCO was a party (Item 1); contracts between AIDCO and any other party as of specified dates ranging from September 24, 2008 to December 8, 2010, including but not limited to AIDCO's contracts with Kraft, Proctor & Gamble, Solo Cup, R.A.

5

Jones, Ventura Foods, and Kraft Food, Aidco's facillity lease, and Aidco's lease for a computer

system (Item 2); all documents that evidence, reflect upon, relate to or refer to AIDCO's financial

condition since January 1, 2007 (Item 3); all documents that evidence, reflect upon, relate to or

refer to any payments made by AIDCO, Palligistics, and NS Fund to any employee, agent or

representative of AIDCO since September 24, 2008 (Item 4); financial information for Salh and

Olivia Khan (Items 5, 6, 7); all documents that evidence, reflect upon, relate to, or refer to any

consideration the Khans have received, have been promised, or expect to receive from

Palligistics or NS Fund and their subsidiaries and affiliates (Item 8); all documents that evidence,

reflect upon, relate to or refer to ownership of Palligistics (Item 9); all business transactions of

any type or nature between and/or among AIDCO, Palligistics, NS Fund and/or the Khans, as

well as their subsidiaries and affiliated entities, since January 1, 2008 (Item 10); and all

communications between and/or among AIDCO, Palligistics, NS Fund and/or the Khans, as well

as their subsidiaries and affiliated entities, since January 1, 2008 (Item 11).

     The Court specifically ordered respondents to provide the following to plaintiff within 20

days of the Court's order:

-    [A]ccess to NS Fund's hard drive . . . for purposes of data recovery at plaintiff's expense
. . . .;

-    [A]ny other communications, whether in hard copy or electronic format, that exist as
requested by Item 11. . . . To the extent respondents claim any such communications are
subject to the attorney-client privilege, respondents must produce a privilege log detailing
the senders, recipients, dates, and topics of the communications.

(*Id*. at 15).

     On June 29, 2011, respondents filed a "Notice of Compliance with Court's Order,"

stating that on June 27, 2011, they had complied with the Court's June 8, 2011 order directing

6

them to provide additional discovery.  (Doc. 16).  Respondents listed the documents they had

provided, indicated they were unable to locate certain information, and specified other

information that was yet to be provided.  In response to Item 11, respondents stated that Salh and

Olivia Khan were "reviewing old emails" to determine if it was necessary to compile a privilege

log of communications between respondents' counsel, and if no such communications were

found, they would provide an affidavit explaining their efforts to plaintiff's counsel.  (Doc. 16 at

2).  Respondents stated that NS Fund was "in the process of making arrangements with Plaintiff

and Plaintiff's data recovery experts regarding imaging [NS Fund's] damaged disk drive" and

hoped to provide the image sometime that week.  (*Id*.).

On July 7, 2011, respondents indicated to plaintiff through counsel that they would make

NS Fund's hard drive available for mirror imaging following the execution of a "HIPPA Business

Associates Agreement" and Confidentiality Agreement by plaintiff's electronic discovery vendor

Global Legal Discovery, LLC ("Global") and CompuSleuth, an Ohio sole proprietorship and

Global affiliate.  (Doc. 19-1, Declaration of William Daniel Davis, Esq., ¶ 3).  Those entities

executed the requested documents and sent them to respondents' counsel, Benjamin J.

MacDowell, by email on July 8, 2011.  (*Id*. at ¶ 4; Exh. B).  On July 14, 2011, Todd Markley,

the sole proprietor of Compusleuth, met with Neil Johnson, the President of NS Fund, to retrieve

the hard drive for mirror imaging.  Mr. Johnson did not produce NS Fund's hard drive but

instead gave Mr. Markley a 16GB USB flash memory stick with a handwritten note stating, in

essence, that NS Fund had recently moved its offices and the hard drive could not be located.

(Doc. 19-2, ¶ 3, Affidavit of Todd Markley, Exh. A).  On that same date, Mr. Davis informed

Mr. MacDowell that NS Funds' failure to produce the hard drive was unacceptable.  (Doc. 19-1,

7

Exh. C).  Mr. MacDowell responded by email that his client had told Mr. MacDowell that the disk had been "lost in his office move."[3]  (*Id.*; Exh. C).

On July 21, 2011, Aetna filed its motion for contempt, alleging that respondents were in willful contempt of the Court's June 8, 2011 order directing them to produce certain items of post-judgment discovery enumerated in the Court's order within 20 days.  (Doc. 18).  Plaintiff moved pursuant to Fed. R. Civ. P. 45(e), 18 U.S.C. § 401, and/or the Court's inherent authority for an order directing respondents to show cause why they should not be held in contempt and required, jointly and severally, to pay a fine of $644,244.74 or, in the alternative, (a) $5,000.00 per day until they purge themselves of the contempt, and (b) plaintiff's reasonable attorney's fees and litigation expenses.  *Id.*  Plaintiff asserted that respondents refused to obey the Court's order to provide the following discovery within 20 days: (1) access to NS Fund's hard drive for purposes of data recovery at plaintiff's expense, and (2) "all communications between and/or among AIDCO, Palligistics, NS Fund and/or the Khans, as well as their subsidiaries and affiliated entities, since January 1, 2008." (Item 11).  (*Id.* at 3, citing Doc. 15 at 14-15).  Plaintiff stated that as of July 21, 2011, it had not received a single email from the Khans or an affidavit setting forth the Khans' efforts to retrieve documents.  (Doc. 18 at 4-5).  Plaintiff further stated that when it sought to retrieve the hard drive for mirror imaging on July 14, 2011, following execution of the confidentiality agreements with Global and Compusleuth, respondents did not produce the hard drive; respondents instead turned over a 16GB USB flash memory stick with a note stating, in essence, that the hard drive had been misplaced (Doc. 19-2, Markley Decl.,

---

[3]Mr. Davis states in his Declaration that Mr. MacDowell informed him of this on Friday, July 15, 2011, as shown in the email attached as Exhibit C, but Exhibit C shows the date of the email is Thursday, July 14, 2011. (Doc. 19-1, Exh. C).

¶¶ 2-5); and when plaintiff protested, respondents indicated the following day that the hard drive had been "lost." (Doc. 19-1, Davis Decl. at ¶ 6). As of July 21, 2011, respondents had not produced the hard drive. (Doc. 18 at 4). It was not until July 25, 2011, soon after the contempt motion was filed, that NS Fund provided the hard drive to the data recovery company selected by plaintiff. This was 27 days after the Court imposed deadline. (Docs. 15-1, 59-2). Respondents claim the hard drive was lost when NS Fund moved its operations and it was produced as soon as it was located. (Doc. 59 at 2).

On August 23 and 24, 2011, Salh and Olivia Khan filed affidavits. (Docs. 22, 23, 24). Salh Khan states that he is the president and sole remaining officer of Aidco (Doc. 22 at ¶ 3) and Olivia Khan states she is the former CEO and Vice-President of Marketing of Aidco (Doc. 23 at ¶ 3). Both Salh and Olivia Khan state that Aidco has not conducted any business since March 2010 when its assets were sold to Palligistics (Docs. 22, 23 at ¶ 4); they could not locate in their possession any paper or electronic based communications to or from any third parties concerning the APA, including written or electronic correspondence to or from them as officers of Aidco or to or from any Aidco officers, employees or agents (*Id.* at ¶ 5); and the communications that took place regarding the APA "during this time period" largely took place at Aidco's headquarters, on the telephone, and in discussions with attorneys who drafted the agreement. (Doc. 22 at ¶ 6). The Khans further stated in their affidavits that they took the following steps to search for paper or electronic based correspondence related to the APA: (1) they searched for paper based communications and discovered none; (2) they asked "third party Information Technology Company, hired by Palligistics to search and to recover archived electronic communications related to the Aidco Purchase Agreement by requesting all archived Aidco

9

electronic correspondence for the entirety of 2009 through the winding up of Aidco's affairs in March 2010;" and (3) following the search by "the third party," the Khans "again spoke to 'Aidco's Information Technology group' and discovered that the person could not locate archived electronic communications of Aidco for the entirety of 2009 through the winding up of Aidco's affairs in March of 2010." (Docs. 22, 23 at ¶ 7). Salh Khan further stated in his affidavit that to his knowledge, his 401k statement, all W2 statements for the requested time periods, all tax returns, and all bank account statements for personal accounts have been provided to plaintiff. Doc. 22 at ¶ 11). The Khans stated that they had no other information in their possession that had not already been provided to plaintiff that was responsive to plaintiff's requests for information. (Docs. 22, 23 at ¶ 12).

Salh Khan also filed an affidavit as the authorized representative of Blue Horizon Group USA, LLC (BHG) on August 24, 2011. (Doc. 24). Khan states that BHG was formed for the sole purpose of holding a membership interest in Palligistics (¶ 4); there are no other authorized representatives, officers or employees of BHG (¶ 5); BHG was properly formed in the State of Ohio on February 24, 2010, and it has conducted no business other than maintaining a membership interest in Palligistics (¶¶ 6, 7); the 2010 tax return had not yet been filed for BHG and all bank accounts for BHG had been provided to plaintiff (¶¶ 8, 9); there are no written or electronic communications to or from BHG regarding the APA as it was formed only to maintain a membership interest in Palligistics (¶ 10); and neither he nor BHG have in their possession any other information belonging to BHG that has not already been provided to plaintiff that is responsive to plaintiff's discovery requests (¶¶ 11, 12).

On August 26, 2011, respondents filed a motion asking the Court to issue an order

10

finding they have complied with the Court's order compelling all post-judgment discovery; ordering that plaintiff may not pursue further post-judgment discovery from respondents; ordering that plaintiff must repay respondents $1,791.50 in attorney fees they required as a condition to withdraw their contempt motion; and requesting, in the alternative, that the undersigned set a hearing date on these matters to provide proper guidance to all involved parties regarding discovery. (Doc. 25). Respondents represented in their motion that after the Court issued its June 8, 2011 order and before plaintiff filed its contempt motion, respondent "NS Fund misplaced the damaged hard drive" it had indicated it would provide to respondents during the course of a move to a new office. (*Id*. at 3). Respondents further represented that the APA was "largely discussed orally and that there likely are not any communications of the sort that Plaintiff's (sic) seek available." (*Id*. at 7).

Respondents further represented that all servers and computers owned by AIDCO were transferred to Palligistics as part of APA; the servers were searched; and the Khans asked the "Information Technology Company" to search for "*all*" AIDCO communications during the relevant time period. (*Id*., citing Exh. 5, Khan Affs. at ¶ 7). Respondents further represented that "no emails were found in the search." (*Id*.).

The parties thereafter agreed to postpone a hearing on the pending motions while they attempted to resolve the outstanding discovery issues on their own. During a telephone status conference held on January 18, 2012, the parties advised the undersigned that they had reached a settlement agreement in principal, and the matter was continued to give the parties an opportunity to finalize the terms of their agreement. (Doc. 40). However, the parties were unable to finalize the terms of the settlement.

Plaintiff subsequently filed a series of declarations in response to the Khans' August 2011 affidavits. (Docs. 46-1, 48-1, 49-1, 50-1 - Declarations of Ronald Keith Stewart II, William Daniel Davis, Stan King and Aaron Salisbury). In his declaration dated April 24, 2012, plaintiff's counsel William Davis stated that after he made a request to the Khans on March 28, 2012, to provide contact information for "Information Technology Company," the entity referenced in their affidavits who searched for relevant electronic communications, the Khans submitted a declaration identifying "Nexigen Communications, LLC" as the actual entity who performed the work. (Doc. 50-1). In an email attached to the Declaration, Palligistics' corporate counsel, Benjamin MacDowell, represented on behalf of the Khans that Salh Khan had used the name "ITC" as a generic term in his affidavit because he could not remember the company name when his affidavit was prepared; the actual company was "Nexigen Communications" located in Erlanger, Kentucky; and Aaron Salisbury of Nexigen was assigned to the Palligistics IT team. (Doc. 51-1, Attachment, email dated April 10, 2012). Mr. MacDowell represented that both teams were unable to locate communications. (*Id.*). Salisbury states in his declaration that he is an information technology consultant at Nexigen and from June 8, 2011 (the date of the Court's order) through the date of his declaration, neither the Khans individually nor Palligistics retained the services of Nexigen to search for and/or recover electronic communications and/or correspondence to and from AIDCO. (Doc. 50-2 - Declaration of Aaron Salisbury dated April 24, 2012). The parties agree that neither the Khans nor Palligistics ever hired an entity called "Information Technology Company" to recover electronic communications or correspondence. Moreover, the declarations establish, and respondents agree, that respondents did not hire Nexigen to recover such communications

12

*following* the date of the Court's order. (See. Doc. 59, Exhs. 1-5, Affidavits of Salh Khan and

Olivia Khan, ¶ 10; Kerry Powell, former Vice-President of and General Manager of Palligistics;

Slade Hafner, former Chief Financial Officer of Palligistics; and Philip Raines, former Account

Administrator of Palligistics). Powell's affidavit states that *prior to* June 8, 2011, Palligistics

asked Salisbury to search for Microsoft Outlook folders containing communications relating to

the Aidco and Palligistics transaction. (Doc. 59, Exh. 3, ¶¶ 5-6).

Plaintiff recovered the following electronic communications from either the 16GB flash

memory drive that was produced by NS Fund on July 14, 2011,[4] or the hard drive that was

produced on July 25, 2011:

- Email chain between Salh Khan and Neil Johnson (President of NS Fund - *See* Doc. 5 at 14) dated January 16, 2010, pertaining to hypothetical transaction and referencing AIDCO and NS Fund (Exh. A)
- Email from Olivia Khan to Johnson and Salh Khan dated January 26, 2010, with attached minutes of meeting regarding asset sale of AIDCO to Palligistics and conversion of NS Fund debt (Exh. B)
- Email from Johnson to Stephen Vegh dated February 8, 2010, regarding Palligistics acquisition of AIDCO's assets, with loan request attached (Exh. C)
- Email chain between Fred Robbins, Johnson, John R. Perkins, Jr., and Salh Khan dated February 3 and 23, 2010, regarding draft operating agreement for Palligistics (Exh. D)
- Email chain between Robbins, Perkins and Johnson dated March 1, 2010, with APA balance sheet (Exh. E)
- Email from Steve Sager to Johnson and Perkins dated March 8, 2010, with attached clean and red-lined promissory notes from NS Fund to Salh Khan (Exh. F)
- Email chain between Johnson, Salh Khan and Olivia Khan dated April 13, 2010, regarding the proposed structure of Palligistics (Exh. G)
- Email chain between Salh Khan and Johnson dated April 22-23, 2010 regarding the valuation of Palligistics, BHG's ownership, and an IRS issue, and referencing AIDCO (Exh. H)
- Email from Slade Hafner to Johnson dated June 10, 2010, with Palligisitics balance sheet as of March 31, 2010 (Exh. I)

---

[4]Plaintiff references the flash memory drive as being produced on June 14, 2011, but the email correspondence establishes it was produced on July 14, 2011. (Docs. 19-1, Exh. C; 19-2 at ¶¶ 4, 5, Declaration of Todd Markley).

- Email chain between Salh Khan, Mark Heggem, Johnson, Christy Kessler, Slade Hafner and C. Kidson dated June 9 and 23, 2010, which appears to be a proposed capitalization structure of Palligistics and which mentions NS Fund's obligation (Exh. J).

(Doc. 45-1- Declaration of Attorney Davis filed on March 19, 2012).

Palligistics was placed into receivership on February 2, 2012. (Doc. 59 at 4). Ronald Keith Stewart II, a former production manager at Palligistics, was subsequently retained by the receiver, Chikol, LLC, to recover certain of Palligistics' physical assets. (Doc. 46-1, 3/21/12 Stewart Declaration). Among the assets he recovered were servers formerly in use at Palligistics, which he personally copied and which contained 2 terrabytes (TB) of data. (*Id*. at ¶¶ 4, 5). Mr. Stewart has personal knowledge from this process that the servers contain electronically-stored information with creation dates spanning at least ten years, and the servers and copies are currently in the receiver's possession. (*Id*. at ¶¶ 6, 7). Communications responsive to plaintiff's subpoenas that were recovered from Palligistics' servers were provided to plaintiff by the receiver. (Doc. 51-1, Exhs. 1, 2, 3 - Declarations of Jack Snyder, Kerry Powell, and William Daniel Davis). Many of the files are .pst Microsoft Outlook files. (Davis Aff., Exh. 3, ¶ 5).

Plaintiff filed a Motion for Leave to File Instanter Supplemental Brief in Support of Motion for Contempt on April 24, 2012.[5] (Doc. 51). The Court granted plaintiff's motion, and plaintiff filed a supplemental brief in support of its motion for contempt on June 5, 2012. (Doc. 53). Plaintiff argues that a fine in the amount of $644,244.74 against respondents, jointly and severally, is warranted because (1) NS Fund was approximately one month late in complying

---

[5]Plaintiff did not attach its brief to the motion but subsequently filed the brief after being granted leave of Court. (Doc. 53).

14

with the Court's June 8, 2011 order to turn over its hard drive; (2) affidavits the Khans have filed are prima facie evidence of contempt because the statements in the affidavits show that the Khans did not search their personal computers, neither Palligistics nor the Khans searched for communications other than those "related to the [APA]," and neither Palligistics nor the Khans searched for communications for the 2008 or post-March 2010 time frame; and (3) the Khans apparently lied to the Court as neither the Khans nor Palligistics ever hired an entity called "Information Technology Company" (Doc. 53, citing Docs. 48-1, 49-1, 50-1), and after Palligistics was placed into receivership on February 2, 2012, communications responsive to plaintiff's subpoenas recovered from Palligistics' servers were provided to plaintiff by the receiver. (*Id.* at 4-5, citing Docs. 51-1, 51-2, 51-3).

Respondents filed a response to plaintiff's supplemental brief and supporting exhibits on July 10, 2012. (Doc. 59). Respondents state that they largely agree with plaintiff's summary of the pertinent facts. (*Id.* at 2). Respondents assert that in "probably" February or March of 2011, the Khans asked Nexigen to search the Palligistics server for "all archived electronic correspondence for the entirety of 2009 through the winding up of Aidco's affairs in March 2010." (Doc. 59, citing Exhs. 1, 2 - Khans Affidavits at ¶¶ 12, 14). They claim that during this search, no Aidco Microsoft .pst history files were found; Palligistics was subsequently placed into receivership on February 2, 2012, at which time plaintiff received copies of Palligistics' servers containing communications responsive to Aidco's subpoenas; and the emails that were located were emails saved to project files of the former company, Aidco, and because they were not part of the email history Nexigen was asked to search, they were not located by Nexigen. (Doc. 59 at 4; Khan Affidavits, Exhs. 1, 2 at ¶¶ 20, 22 - explaining that the reason

15

respondents did not find the emails plaintiff discovered on the Palligistics server was Nexigen

was not instructed to search individual file folders, which is where the emails plaintiff found

were located, and neither Palligistics nor Nexigen thought to look in this area of the server.).

## C. ANALYSIS

Respondents' conduct constitutes disobedience of the Court's June 8, 2011 order

compelling post-judgment discovery. Fed. R. Civ. P. 37(b)(2)(A)(vii) provides that where a

party or party's officer, director, or managing agent fails to obey an order to permit discovery, the

Court may issue further just orders, including "treating as contempt of court the failure to obey

any order. . . ." The contempt power of the court "enforce[s] the message that court orders and

judgments are to be complied with in a prompt manner." *IBEW v. Gary's Elec. Serv. Co.*, 340

F.3d 373, 378 (6th Cir. 2003) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th

Cir. 1987)). In a contempt proceeding, the moving party must demonstrate "by clear and

convincing evidence that the party to be held in contempt violated a court order." *U.S. v.

Conces*, 507 F.3d 1028, 1041-42 (6th Cir. 2007); *Gary's Elec. Serv. Co.*, 340 F.3d at 379.

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may

defend by coming forward with evidence showing that he is *presently* unable to comply with the

court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (emphasis in original) (citing *United

States v. Rylander*, 460 U.S. 752, 757 (1983)). To satisfy this burden, respondents "must show

categorically and in detail why [they are] unable to comply with the court's order." *Id.* (quoting

*Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The Court must

consider whether respondents "took all reasonable steps within [their] power to comply with the

court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quoting *Peppers v. Barry*, 873 F.2d

16

967, 969 (6th Cir. 1989)).

In the instant case, respondents' failure to timely respond to the Court's order compelling discovery and to provide to plaintiff specific items of discovery after being ordered to do so by the undersigned magistrate judge constitutes disobedience of a lawful court order and thus contempt before the magistrate judge.    Respondents failed to timely produce within 20 days of the Court's June 8, 2011 order the following discovery: (1) the NS Fund hard drive, and (2) communications among themselves and their subsidiaries and affiliates since January 1, 2008. Respondents have not shown they took "reasonable" steps to comply with this Court's order compelling discovery.    To the contrary, respondents' explanations for why they failed to timely produce the hard drive and responsive documents are inconsistent and are not credible.    Prior to plaintiff's filing the motion for contempt, respondents consistently maintained that their communications surrounding the APA were primarily oral and there were no document based communications in their possession.    In response to subpoenas seeking communications among respondents about the APA, respondents represented they did not have possession, custody or control of any responsive communications other than the APA and related documents.   (Docs. 1, 2, Exhs. M, N; Doc. 3, Exhs. O, P).    The Khans represented to the Court in March and April of 2011 that there were no document based communications between or among respondents.   (Doc. 5 at 7, 14; Doc. 13 at 5).    However, it is clear upon a review of the complete record in this case, including the parties' briefs, affidavits and declarations, that respondents knew or should have known of the existence of such communications and failed to conduct a reasonable search for them.

First, respondents have not shown that they conducted a search for any documents for the

17

year 2008 as ordered by the Court in June 2011. (Doc. 15 at 14). Nor have respondents offered an adequate explanation for their failure, asserting only that they limited their search to the time period January 2009 through March 2010 because the servers that were searched are assets of Palligistics and "logically, if there is no electronic correspondence of Aidco of any kind from the period of January, 2009 through March, 2010, there will not be any Aidco electronic correspondence from earlier points in time." (Doc. 25 at 8). This is not an adequate justification for failing to conduct a specific search for documents dating from January 1, 2008, as ordered by the Court.

Second, respondents' efforts to locate electronic communications for the period 2009 through March of 2010 fall far short in several respects. Respondents state in their affidavits that in February or March of 2011, they retained the technology company "Nexigen" to search for electronic communications for 2009 through March of 2010. (Doc. 59, Exhs. 1-5). Respondents state that they limited the parameters of the search to the "entire email history of Aidco," which disclosed no relevant email communications, and they did not instruct Nexigen to search for individual file folders, which is where the relevant communications that plaintiff subsequently found were located. (Doc. 59 at 4-5). Yet, respondents fail to provide a plausible explanation for why they limited their search in this manner, stating only that "Palligistics and Nexigen did not think to look in this area of the server" (that housed the individual file folders) and therefore did not find the communications that plaintiff discovered upon conducting its own search of the Palligistics servers. Respondents' vague explanation suggests that they did not make a reasonable effort to find the relevant communications in response to plaintiff's discovery requests.

18

Moreover, respondents failed to take any steps to locate relevant email communications in response to the Court's June 2011 order and instead relied on the unsuccessful search conducted *prior to* issuance of the Court's order. Respondents fail to explain why they did not undertake additional efforts to find relevant communications *following* issuance of the order. Respondents simply assert that the Court's order "did not require respondents to conduct another search so another search was not conducted." (*Id.* at 4). This is not an adequate explanation. Respondents represented to the Court that all servers and computers owned by Aidco were transferred to Palligistics as part of the APA. (Doc. 25 at 7 - "[N]o emails were found in the search. Logically, this is because the Aidco servers are now being used to house Palligistics information because Palligistics took ownership of them in the Asset Purchase Transaction."). Respondents therefore knew or should have known that the Palligistics servers would contain relevant email communications, and respondents were obligated to take all reasonable steps to find such communications. *See Gary's Elec. Serv. Co.*, 340 F.3d at 379. Respondents' failure to take *any* additional steps to search for relevant communications following issuance of the Court's June 2011 order, coupled with the fact that plaintiff was able to find the undisclosed communications so readily when given the opportunity to conduct its own search of the Palligistics servers, indicates that respondents did not make a reasonable effort to comply with the Court's order.

Finally, respondents have made conflicting representations about the availability of the NS Fund hard drive and did not take reasonable steps to produce the hard drive in a timely fashion.

For these reasons, it appears respondents have been less than forthcoming about their

19

efforts to find the relevant email communications and to produce the hard drive in a timely manner.   It does not appear that respondents have taken "all reasonable steps within [their] power to comply with the court's order."   *See Gary's Elec. Serv. Co.*, 340 F.3d at 379.

Accordingly, it is submitted that the district judge should issue a show cause order to respondents to appear at a date certain before the district judge to show cause during a hearing why they should not be held in contempt of court for failing to obey the Court's June 8, 2011 discovery order.   (Doc. 15).

## II.   RESPONDENTS' MOTION FOR AN ORDER FINDING THEY HAVE COMPLIED WITH THE COURT'S ORDER COMPELLING POST-JUDGMENT DISCOVERY, TERMINATING PLAINTIFF'S POST-JUDGMENT DISCOVERY ATTEMPTS, ORDERING PLAINTIFF TO RETURN ATTORNEY FEES PAID BY RESPONDENTS, OR IN THE ALTERNATIVE SETTING A HEARING ON OUTSTANDING DISCOVERY MATTERS (DOC. 25) AND RESPONDENTS' MOTION FOR TEMPORARY CESSATION OF DISCOVERY (DOC. 26)

Respondents move the Court to issue an order finding they have complied with the Court's order compelling discovery, terminating plaintiff's post-judgment discovery attempts, and ordering plaintiff to return attorney fees paid to plaintiff's counsel.   (Docs. 25, 26).   For the reasons explained in connection with plaintiff's motion for contempt, respondents are not entitled to an order finding they have complied with the terms of the Court's June 8, 2011 order or to an order terminating plaintiff's post-judgment discovery efforts.

Respondents also seek the return of $1,791.50 in attorney fees they paid to plaintiff pursuant to the terms of an email exchange between their counsel.   The exchange began on July 27, 2011, when Mr. Davis, counsel for plaintiff, represented to Mr. MacDowell, counsel for respondents, that in light of NS Fund's production of the hard drive, plaintiff was "in principle willing to withdraw [its] pending motion for contempt if NS Fund agrees to pay the costs

20

[roughly $1,800] incurred in drafting the same. . . .   An actual stipulation/agreement would need to be in a separate writing, independent of this email."   (Doc. 25-1 at 11).   In a subsequent email dated August 1, 2011, Mr. Davis informed Mr. MacDowell that although he declined to state definitively that the only remaining issue with respondents' production pertained to emails, those remained plaintiff's biggest concern.   (*Id.*).   Mr. Davis stated to the extent the Khans claimed they did not have possession, custody or control over any relevant emails, an affidavit setting out that statement and the process by which the Khans reached their determination would be appropriate.   (*Id.*).   Mr. Davis also wrote: "Payment of the fees incurred in drafting the motion to compel is a necessary condition to our withdrawal of the pending motion for contempt. Accordingly, this motion should be resolved first, before we attempt to resolve all the terms and conditions of an agreement to withdraw that motion, which, to reiterate, needs to be in a separate authenticated writing to be valid."   (*Id.*).   On August 9, 2011, respondents paid fees to plaintiff in the amount of $1,791.50.   (Doc. 25-1 at 16-17).   Subsequently, in an email dated August 11, 2011, Mr. Davis informed Mr. MacDowell that when respondents "compl[ied] with the order, e.g., we get an affidavit from the Khans, we'll withdraw the motion [for contempt]."   (Doc. 25-1 at 20).   Respondents assert they complied with the terms of the agreement by filing the Khans' affidavits on August 23, 2011 and August 24, 2011, stating they did not have possession, custody or control over any relevant emails and indicating the process by which this determination was reached.   (Doc. 25 at 4).

The Court should not order the return of attorney fees paid in light of respondents' failure to comply with the terms of the Court's June 8, 2011 order on plaintiff's motions to compel. (Doc. 15).   Because respondents failed to timely produce the discovery ordered by the Court,

21

plaintiff was justified in declining to withdraw its motion for contempt.   Plaintiff is entitled to retain the fees it incurred in connection with the motion.   *See* Rule 37(b)(2)(C) (sanctions for not obeying an order to provide discovery include the reasonable expenses, including attorney fees, caused by the failure).

## IT IS THEREFORE ORDERED:

1.   Respondents' motion for an order finding they have complied with the Court's post-judgment discovery order, for the cessation of discovery, or for a hearing on outstanding discovery matters (Doc. 25) is **DENIED**.

2.   Respondents' motion for the temporary cessation of post-judgment discovery (Doc. 26) is **DENIED.**

## IT IS THEREFORE RECOMMENDED:

1.   Respondents' motion for the return of attorney fees (Doc. 25) should be **DENIED**.

2.   The district judge should issue a show cause order to respondents to appear at a date certain before the district judge to show cause during a hearing why they should not be held in contempt of court for failing to obey the Court's June 8, 2011 discovery order.

**IT IS SO ORDERED.**

Date: __8/13/2012__

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AETNA GROUP USA, INC.,
    Plaintiff

Case No. 1:11-mc-023

Spiegel, J.

vs

Litkovitz, M.J.

AIDCO INTERNATIONAL, INC.,
    Defendant

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).